Good morning, Your Honor. May it please the Court, Maliha Hugg on behalf of Petitioner Ranjit Mann. Petitioner respectfully submits that the record compels the conclusion that he establishes eligibility for asylum, withholding of removal, and relief under the Convention Against Torture based on his credible testimony. The record shows that any inconsistencies in his testimony that the I.J. and the Board noted are either not really inconsistencies or that he did not have an opportunity to explain himself or that they are too trivial to go to the heart of the matter in this pre-real ID case. So the Board in this case noted two main alleged inconsistencies, namely whether Petitioner consistently testified that he was a member of the All India Sikh Student Federation, or ASF, or the Sikh Student Federation, which is the SSF. And the second issue was the date, timing, the date and timing of Petitioner's second arrest in India. Now, as to the first issue, Petitioner submits that no reasonable fact finder could conclude that Petitioner was not credible because he did not distinguish between ASF and SSF in a consistent manner.  Yes, Your Honor. Well, SSF is a faction that broke off from the ASF. So Petitioner ---- But when you're talking about political opinion, that does matter. Wouldn't you agree? Not necessarily, Your Honor. They are part of the one group, and then they split into different factions. And it is not clear, you know, how different their political views were. In fact, when Petitioner tried to explain the differences between the two, they sounded more like similarities than differences. And so in Jesse v. Gonzalez, this Court found that where Petitioner presented proof of membership in ASF on an SSF letterhead, it did not support an adverse credibility finding. And the Court noted ---- Could you slow down a little bit? I'm sorry. I'm sorry, Your Honor. When I'm nervous, I talk fast. Okay. All right. Well, then, didn't the State Department report suggest that SSF had a history of violence which was not necessarily the same situation with AISSF? And isn't that suggesting that it was clearly recognized that these are separate and distinct organizations? Yes, Your Honor. But the fact that it broke off from ASF and perhaps later became more violence prone, you know, it does not mean that it did not ---- it had different political ends or political goals than the ASF. And Petitioner ---- I think the point of the IJ was that because the Petitioner couldn't ---- was confused about the groups, then it cast doubt on the credibility of his claims because he was not knowledgeable about the differences in the groups, was confused about those, and so forth. Your Honor, I would submit that I don't think Petitioner ever claimed to be a major player in either of these groups. And so it's possible that he did not know the exact nuances, and he was just using SSF and ASF as sort of substitute for each other. The way he was testifying, it was very consistently that he was inconsistent about that. But I don't think that this is an inconsistency that reflects on his credibility. Well, what about the alleged, I think it was the second incident, where he seemed to confuse the facts of the second incident with the first incident? Yes, Your Honor. Do you want to talk about that? Yes. So the issue about the second arrest. Now, before getting into those, I'd just like to note that the first time he is asked about his arrest in court, he was, in fact, consistent about the dates of all three arrests with his declaration, which is on AR-122. He's asked, when were you arrested, and he gives all three dates consistently with what he had written in his declaration. However, when he testifies about his second arrest, consistent with his declaration on direct examination. But when he's asked on cross-examination, he starts to confuse the dates by a few months. Excuse me. It wasn't the dates as much as it was the facts. He gave the facts of the first arrest when asked about the second. And when they pointed that out to him, he then seemed to be even more confused or he kept talking about the first and they said, no, the second arrest. And then he went back to the first. Yes, Your Honor. He didn't seem to quite get the story right. Well, Your Honor, I think that he, Your Honor is correct that he was, in fact, he seemed confused in his, in the way he was testifying and about his second arrest. And, in fact, he noted the place of meeting of his first arrest and then the manner of when the police came about the third arrest. So he was mixing the facts of the three arrests. And Your Honor would note that the second and the third arrests were, in fact, very similar. They both happened in a college ground after, in a political meeting. So, but he was never asked any clarifying questions about this, either by the I.J. or by his attorney or by the government attorney. He was never given and he never had an opportunity to address these discrepancies. And, Your Honor, I would just also note that these discrepancies. But I'm noting that when he first made an error, the government attorney said you're talking about the first arrest. Can we talk about the second arrest? Right. So why wasn't that sufficient to give him a clue that he had misspoken, if that were the case? Yes, Your Honor. I think that that could be a hint that, you know, or it could be an opportunity for him to talk. However, when the I.J. basically, towards the end, just very abruptly cuts off the cross-examination and says, I've made up my mind. He only talked about two arrests, even though he wrote about three arrests. You know, I've already made up my mind. In fact, he had talked about three arrests and the I.J. had already made up her mind before cross was even completed. And without asking any clarifying questions about, you know, why are you confusing the And I would also note that I would just, as Petitioner, we would also submit that the heart of his claim is that he was persecuted for his support of these groups. It's not, and these are details that do not go to the heart of his claim. And to be, yes. Well, it goes to the heart of the claim to be able to describe the acts of persecution. Not much could be closer to the heart of the claim than that. And, Your Honor, he did describe how he was persecuted and when he was arrested. He was consistent about his description of that. So the only discrepancy was regarding the manner in which he was arrested. And we believe that that is one detail that should not impugn the rest of his testimony. The great deference, of course, is given to the I.J. in making factual findings. And it's because we're looking at a cold record. The I.J. is able to look at the statements in the context of the hearing. Is there anything in the way the I.J. acted during the course of the hearing which suggests to you that he or she would not have the ability to assess credibility or bias in any particular way in the way they approached the case? No, Your Honor. I did not read a bias into the record. I just think that she had very abruptly sort of made up her mind. And there were, by the end of the, actually in the middle of Cross, and he, I mean, there was no questioning about the second arrest or third arrest. It was just focused on the second, sorry, about the first arrest and the third arrest. The testimony on Cross was just focused on the second arrest. And it was just very abruptly cut off without any clarifying questions being asked by the I.J. about, you know, why are you confusing this or what's going on here. But I don't read any bias by the I.J. into the record. You would say there's no bias, but I gather you're saying there's a lack of due process in the failure to conduct a thorough hearing and to terminate it when she made up her mind prematurely. Yes, I do say that, Your Honor, in so many words, yes. But not as such that she was biased against the Respondent because of his political beliefs or anything like that or religious beliefs. I didn't read that in the record. All right. We'll give you two minutes for rebuttal. Okay. I only have 40 seconds. Thank you. Thank you. Thank you. Good morning. My name is Jesse Bless. I represent the Attorney General of the United States. Substantial evidence supports the adverse credibility determination in this case. And the panel and Petitioner has highlighted the two critical,  I want to point out at the outset that the immigration judge did allow for redirect and an opportunity for the Petitioner, actually a second opportunity, one already highlighted by Judge Thomas, to correct and identify and explain away the two different versions presented and his differing testimony with regard to what association, if any, he belonged to. There's no compelling evidence in the record that the Petitioner presented a credible claim because there are specific and cogent reasons laid out by the immigration judge for finding the Petitioner not credible. Well, is there clear evidence that the SSF and the AISSF are related or totally distinct organizations? And if they're totally distinct, I suppose that that lends credibility to your argument that he shouldn't be confused. It certainly is. The State Department regards them as differing or having different, I guess, methods for, I guess, a similar purpose, which is, you know, this separate state. It seems as if a couple of groups broke off from the central group. Was that in any sense geographical, that breakup? As I read the State Department, it had more to do with maybe, I guess, a way of different methods or different beliefs on how we can achieve this goal, which is Khalistan or a separate state based on this religion. But I think that what's critical here is that the Petitioner himself, you know, never really, you know, he says they're different. But then he identifies himself with each group. And he says they're distinct, but I belong. Then he says I belong to X. And then he says I belong to Y. And that casts doubt on his credibility, because as the immigration judge, as a fact finder, he's left with differing versions of events and, again, doesn't know what to believe, which is essentially what credibility is all about. All right. I have no further questions. Thank you. Your Honors, I just had one note, which is that the State Department report said that the ASEF, the bigger group, broke off into factions in the late 1980s and early 90s. And, you know, Petitioner's first arrest happens in 92. So all of these, the fact that he could not or referred to both groups as his group is, I think, fairly understandable given that he was a member at the time when the group was going through a significant, going through a change. So I believe that, you know, the fact that he was just confusing the two in court does not reflect that he was, in fact, not credible. He was referring to them alternatively and, in fact, described them as pretty much the same thing. He couldn't articulate a difference between the two groups because there is none as far as their political views are concerned. That's it, Your Honors. I would submit that his petition should be remanded. Thank you. Thank you, Counsel. The case just argued will be submitted.
judges: Sessions, Reinhardt, Thomas